**IT IS ORDERED as set forth below:**



**Date: October 12, 2018**

_____

**Paul W. Bonapfel**
**U.S. Bankruptcy Court Judge**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF GEORGIA
### ROME DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| TRAVIS WADE RAGSDALE, | ) | CASE NO. 15-40844-PWB |
| | ) | |
| Debtor. | ) | JUDGE BONAPFEL |
| | ) | |

### ORDER APPROVING SETTLEMENT AND PROPOSED CONVEYANCES OF CASH AND REAL PROPERTY FREE AND CLEAR OF LIENS AND ENCUMBRANCES

This matter came before the Court for a hearing on October 3, 2018, on the Motion of Debtor in Possession for an Order Pursuant to Sections 363, 365, and 105 of the Bankruptcy Code and Bankruptcy Rule 9019, Approving Settlement and Proposed Conveyance of Cash and Real Property Free and Clear of Liens and Encumbrances (the "Motion") [Doc. No. 187] filed by

1

16087572v4

the debtor-in-possession, Travis Wade Ragsdale (the "Debtor"), on September 6, 2018. According to the Motion, the settlement agreement reached between the Debtor and his former spouse, Shannon Tibbitts Caillouet ("Caillouet") is related to, as it is to be funded by, the Debtor's proposed use from the balance of funds he escrowed from prior sales, and additional net proceeds to be realized from his proposed sale of real property consisting of 24.7 +/- acres of the property at 1735 Cochran Rd, Dallas GA 30132, which is the same as Land Lots 230 & 275 of the 3rd District, 3rd of the Paulding County land records, (hereinafter referred to as the "Property"), to Jim Sisco of 701 Braidwood Ridge, Acworth, GA 30101, Steve Ostiguy of 588 Braidwood Drive, Acworth, GA 30101, and Derek Gosselin of 692 Braidwood Terrace, Acworth, GA 30101 (hereinafter collectively referred to as "Purchasers") for the sum of Three Hundred Thousand Dollars ($300,000.00) under terms more specifically described in the purchase and sale contract with an offer date of August 7, 2018, thereafter executed between the Debtor and Purchasers and attached to the Motion.

The Debtor's settlement agreement with Caillouet contains the following terms and conditions:

> 1. Caillouet's claim is approved at $300,000, which shall be the full and final settlement amount of her claim – including any claims for attorney's fees and interest – provided the full amount is paid by 12/01/18. In the event the full amount is not paid by 12/01/18, the parties reserve all rights to claims, additions, defenses, setoffs, contribution and otherwise, whether asserted in bankruptcy court or in state court, including the right to seek contribution or clarification, and the right of either party to seek attorney's fees incurred in this action through the Superior Court in a subsequent contempt action, if necessary;
> 2. Ragsdale shall file a motion to pay Caillouet, through her attorney, The Falcone Law Firm, P.C., the cash sum of $115,000 instanter (upon approval of United States Bankruptcy Court), and shall file a motion to approve the sale of property necessary to remit the balance owed;
> 3. Ragsdale agrees to pay Caillouet the balance of the claim ($185,000) upon closing of a real estate contract that is presently scheduled to

2

    close on 12/01/18; furthermore,

        (a).  Ragsdale represents that that contract has been entered into in good faith with a third party buyer.

        (b).  Ragsdale represents that there are no known impediments to the sale.

        (c).  Ragsdale represents that he intends to close the sale as indicated.

    4.  Caillouet's lien on the property is valid and not in violation of the stay, but, at closing, she shall release the lien to facilitate closing on the sale contemplated in Paragraph 3 above.  Ragsdale waives his claims to the stay-violation issue and, subject to the terms of this agreement, consents to the lien and its continuation.

    5.  If the sale does not close as scheduled, Caillouet reserves the right to pursue contempt action against Ragsdale, and Ragsdale reserves rights as contemplated in provision 1 above;

    6.  If the full amount is paid by 12/01/18, all other issues raised in the parties divorce decree, settlement agreement, and Adversary Proceeding are deemed settled and resolved, except as to the following specific items:

        (a).  Issues relating to child support, visitation and custody; and

        (b).  Both parties reserve their rights and defenses should a 1099(a) or (c) tax liability arise as a result of the credit card settlements.

    7.  Ragsdale acknowledges that the debt to Caillouet is non-dischargeable in Chapter 11, but reserves rights as described in #1 above.

Because the settlement agreement requires the Debtor to sell the Property to generate the balance of cash needed to fulfill the obligations therein, the Motion seeks approval of the proposed sale to Purchasers pursuant to the contract attached to the Motion.

The Motion proposes that the Debtor remit $185,000 of the net proceeds after payment of normal, customary, and necessary realtor commissions, closing costs, and pro-rated taxes, consistent with the Purchase and Sale Agreement to Caillouet prior to December 1, 2018, in satisfaction of the balance of her $300,000 claim.

Caillouet – whose claim makes her the largest creditor remaining in the case – supports the Debtor's Motion.  No other parties responded to the Motion or appeared to voice any objections thereto.  Present at the Hearing were counsel for the Debtor and counsel for Caillouet.

3

The Court having reviewed and considered the relief sought in the Motion to Approve Settlement; and due and sufficient notice of the relief requested in the Motion having been given under the particular circumstances; based on the consent of the Debtor and Caillouet, and the entire record of this case; for good cause shown and the reasons stated in the Motion and on the record at the hearing on October 3, 2018; and it appearing that the relief contained herein is in the best interests of Debtor, his estate, his creditors, and other parties in interest, it is hereby FOUND, CONCLUDED, AND ORDERED THAT:[1]

1. The terms and conditions of the Settlement Agreement negotiated between the Debtor and Caillouet are hereby approved. The Court further approves and authorizes the Debtor's proposal to convey $115,000 cash from escrow, to Caillouet through her attorney, immediately upon entry of this Order.

2. The Debtor shall be, and hereby is, authorized to take all further actions as may be reasonably requested in order to facilitate and consummate the sale of the Property to the Purchasers under the terms and conditions of the purchase and sale contract with an offer date of August 7, 2018, and finally executed between the Debtor and Purchasers as reflected by the contract which is attached to the Motion as an exhibit, and subject to the terms and conditions of this Order.

3. The Debtor shall be, and hereby is, authorized to execute and deliver all documents necessary to sell the Property pursuant to, and in accordance with, the terms of that certain purchase and sale agreement with an offer date of August 7, 2018, and finally

---

[1] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law under Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

4

executed between the Debtor and Purchasers as reflected by the contract which is attached to the Motion as an exhibit, and subject to the terms and conditions of this Order.

4. The Debtor shall be, and hereby is, authorized to take all further actions as may be reasonably requested in order to facilitate and consummate the sale of the Property, in accordance with the purchase and sale agreement, subject to the terms and conditions of this Order.

5. Subject to and contingent upon Caillouet's receipt of the Caillouet Payment (as defined below), pursuant to 11 U.S.C. §105(a) and 363(f), the Property shall be transferred free and clear of all interests, liens, encumbrances, and/or alleged secured indebtedness of any kind or nature (collectively, "Property Interests"), with all such Property Interests to attach to any net proceeds of the $300,000 gross sales price in the order of their priority, with the same validity, force, and effect which they now have against the Property, subject to any claims and defenses the Debtor may possess with respect thereto.

6. Subject to and contingent upon Caillouet's receipt of the Caillouet Payment (as defined below), all persons and entities, including, but not limited to, all debt security holders, judgment lien creditors, governmental, tax and regulatory authorities, lenders, employees, trade, or other creditors holding Interests of any kind or nature whatsoever against or in the Debtor or the estate's interest in the Real Property (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under, out of, in connection with,

or in any way relating to the Debtor or his estate's interest in the Real Property, prior to the closing of its sale, or the transfer of the Real Property to the purchaser thereof, are forever barred, estopped, and permanently enjoined from asserting any such Interests against the Debtor or the estate or the interests of the Debtor and the estate conveyed as they relate to real Property, its purchase, or any successors or assigns.

7. The sale of the Property is subject to the following conditions, which the Debtor is authorized fulfill:  (A) Caillouet shall receive at closing, immediately available funds from the Debtor's net proceeds from the sale of the Property (after payment of all necessary, normal, customary, and reasonable closing fees and expenses, plus all pro-rated property taxes owed by the Debtor to the Paulding County tax commissioner, and realtor's or broker's commissions, if any), the sum of $185,000 to be wired to her bankruptcy attorney pursuant to his wiring instructions (the "<u>Caillouet Payment</u>"), and which shall be received by her attorney not later two (2) business days after closing, and **in no event later than 12:59 P.M. (Eastern Time) on December 1, 2018** (unless otherwise modified and approved in advance by Caillouet); (B) delivery of a draft HUD-1 settlement statement, not later than two (2) business days in advance of the closing of the sale of the Property, evidencing and confirming proposed designation of payment of the Caillouet Payment; and (C) delivery of a true and correct copy of the actual, fully executed settlement statement to her, through her bankruptcy attorney, not later than seven (7) business days after the closing of the sale of the Property.  In the event Caillouet objects to the draft HUD-1 settlement statement, then counsel for the Debtor may coordinate and schedule an expedited

6

hearing on any remaining issues with notice to Caillouet and the United States Trustee.

8. In consideration of the Caillouet Payment, Caillouet shall release, satisfy, quitclaim, or otherwise satisfy any legal or equitable encumbrances or liens she holds or asserts against the Debtor's property as to the claims described in the settlement agreement. After remitting the Caillouet Payment, the remaining net proceeds from the closing of the Property may be remitted directly to the Debtor. After closing and full payment of the Caillouet Payment in satisfaction of the settlement agreement, the Debtor's bankruptcy attorney may release, from any funds remaining in escrow, such amounts not deemed necessary by the Debtor to settle and satisfy the balance of administrative expenses and claims held by any creditors remaining in the case.

9. The purchase and sale contract executed between the Debtor and the Purchasers for the Property was entered into by the Purchasers in good faith, and the Purchasers are each, individually, a good faith purchaser of the real Property as that term is used in Bankruptcy Code Section 363(m). Accordingly, the reversal or modification or appeal of the authorizations provided herein to consummate the sales transactions described in this Order, and in purchase and sale contract for the Property shall not affect the validity of the sale of the Property to the Purchasers, unless such authorization is duly stayed pending such appeal prior to the closing of such sales transactions.

10. Pursuant to, and in accordance with, Federal Rule of Bankruptcy Procedure 6004(h), and notwithstanding the possible applicability of any Federal Rule of Bankruptcy

Procedure or statute that might otherwise provide to the contrary, the terms and provisions of this Order shall be immediately effective and enforceable upon its entry, and no stay of execution, enforceability or effectiveness shall apply to this Order.

**\*\*END OF DOCUMENT\*\***

**Prepared and Presented By:**

BRIAN R. CAHN & ASSOCIATES, LLC


/s/ *Brian R. Cahn*
Brian R. Cahn
Attorney for Debtor-in-Possession
Georgia Bar No. 101965
5 South Public Square
Cartersville, GA 30120
(770) 382-8900
(770) 386-1170 fax
brc@perrottalaw.com


**Reviewed and Consented to By:**


/s/ *Ian M. Falcone*
Ian M. Falcone
Georgia Bar No. 254470
Attorney for Shannon Caillouet
THE FALCONE LAW FIRM, P.C.
363 Lawrence Street
Marietta, GA 30060
(770) 426-9359
imf@falconefirm.com


**Reviewed and Approved By:**


/s/   *David S. Weidenbaum*
DAVID S. WEIDENBAUM
Georgia Bar No. 745892
Trial Attorney
Office of the United States Trustee
362 Richard B. Russell Building
75 Spring Street, SW
Atlanta, GA 30303
404.331.4437
david.s.weidenbaum@usdoj.gov

**DISTRIBUTION LIST**

| | |
|---|---|
| Bank of America<br>PO Box 851001<br>Dallas, TX 75265 | Card Services<br>PO Box 105025<br>Atlanta, GA 30348 |
| Carroll Fertiflizer LLC<br>PO Box 292<br>Taylorsville, GA 30178 | Chase<br>PO Box 15153<br>Wilmington, DE 19886-5153 |
| Chase Auto Finance<br>PO Box 901076<br>Fort Worth, TX 79998 | Discover Card<br>P.O. Box 15251<br>Wilmington, DE 19886 |
| Greenway Park Owners Association, Inc<br>PO Box 1247<br>Santa Rosa, FL 32459 | Gracepoint Church, LLC<br>7915 Dallas Acworth Highway<br>Dallas, GA 30132 |
| Georgia Department of Revenue<br>Taxpayer Services Division<br>PO Box 105499<br>Atlanta, GA 30348-5499 | Internal Revenue Service<br>Suite 400, Stop 334-D<br>401 W. Peachtree St<br>Atlanta, GA 30308 |
| Superior Court of Paulding County<br>Case NO: 14CV3159<br>280 Constitution Blvd<br>Dallas, GA 30132 | J.W. Watson, III<br>240 Constitution Blvd<br>Room 3009<br>Dallas, GA 30132 |
| Kubota<br>PO Box 0559<br>Carol Stream, IL 60132 | Lovett & Myers<br>530 Forest Hill Rd<br>Macon, GA 31210 |
| Paulding County Tax Commissioner<br>240 Constitution Blvd, Room 3006<br>Dallas, GA 30132 | Walton County Tax Commissioner<br>PO Box 510<br>Defuniak Springs, FL 32435 |
| Suntrust Bank<br>PO Box 85024<br>Richmond, VA 23285 | J-Rags Investments, LLC<br>PO Box 1756<br>Dallas, GA 30132 |
| William A. Dupre, IV | U. S. Attorney |

10

Miller & Martin, PLLC
Suite 2100
1180 West Peachtree Street, N.W.
Atlanta, GA 30309

U. S. Attorney
600 Richard B. Russell Bldg.
75 Spring Street, SW
Atlanta GA 30303

Atlanta Communities Real
Estate Brokerage, LLC
C/O Jennifer Reed
3405 Dallas Hwy, Ste 720
Marietta, GA 30064

Travis Wade Ragsdale
1735 Cochran Rd.
Dallas, GA 30132

ATTN: David Weidenbaum
362 Richard B. Russell Bldg.
75 Spring Street, SW
Atlanta GA 30303

Westside Bank
Attn: Tren Watson, CEO
56 Hiram Drive
Hiram, GA 30141

Shannon Ragsdale
C/O Ian M. Falcone
The Falcone Law Firm, P.C.
363 Lawrence Street
Marietta, GA 30060

Synchrony Bank
Attn: Ramesh Singh
25 SE 2nd Avenue, Suite 1120
Miami, FL 33131-1605

11